IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>ORION REFINING CORPORATION,<br><br>Debtor. | Chapter 11<br><br>Case No. 03-11483 (MFW) |
| CYPRESS ASSOCIATES, LLC, AS ORC DISTRIBUTION TRUST REPRESENTATIVE,<br><br>Appellant/Cross-Appellee,<br><br>v.<br><br>FLUOR ENTERPRISES, INC.,<br><br>Appellee/Cross-Appellant. | C.A. Nos. 07-510 and 07-520 (UNA) |

**MOTION OF APPELLANT/CROSS-APPELLEE CYPRESS ASSOCIATES, LLC, AS ORC DISTRIBUTION TRUST REPRESENTATIVE TO STAY APPELLATE PROCEEDINGS PENDING DISPOSITION BY THE BANKRUPTCY COURT OF MOTION FOR RECONSIDERATION AND FURTHER PROCEEDINGS REGARDING THE REQUEST OF APPELLEE/CROSS-APPELLANT FLUOR ENTERPRISES, INC. FOR AN <u>AWARD OF PRE-JUDGMENT INTEREST AND ATTORNEYS' FEES</u>**

Appellant/Cross-Appellee Cypress Associates, LLC (the "ORC Representative"), as the representative of the ORC Distribution Trust (the "Trust"), hereby moves this Court (the "Motion") for an order, in the form attached hereto, staying proceedings with respect to the above-captioned appeal and cross-appeal pending disposition by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") of the Motion Of Cypress Associates, LLC, as ORC Distribution Trust Representative, For An Order (I) Granting Reconsideration, In Part, Of The Court's Findings Of Fact, Opinion And Order, Each Dated July 20, 2007, And (II) Upon Reconsideration, (a) Vacating That Portion Of The Opinion And

Order Authorizing Fluor Enterprises, Inc. To Recover Pre-Judgment Interest And (b) Granting Related Relief filed in the Bankruptcy Court on July 30, 2007 (the "Reconsideration Motion"), and further proceedings with respect to the request of appellee/cross-appellant Fluor Enterprises, Inc. ("Fluor") for an award of pre-judgment interest and attorneys' fees. As grounds for this Motion, the ORC Representative respectfully states as follows:

## NATURE AND STAGE OF THE PROCEEDING

These cases arise from the appeal by the ORC Representative and a cross-appeal by Fluor of certain findings of fact, opinions and orders of the Bankruptcy Court entered in a parallel adversary proceeding and contested matter commenced by Fluor arising out of the chapter 11 bankruptcy case of Orion Refining Corporation. A consolidated trial of these proceedings was held in the Bankruptcy Court from May 7-9, 2007, and on July 20, 2007, the Bankruptcy Court entered its Findings of Fact (the "FOF"), Opinion (the "July 20 Opinion") and Order (the "July 20 Order"). In the July 20 Opinion, the Bankruptcy Court held that Fluor was "entitled to recover from the Trust the principal sum of $20,657,860.58 together with pre-judgment interest, calculated from the date of reconciliation of the sum due through the date of entry of judgment." (*July 20 Opinion at 32*) (Exhibit A hereto). The Bankruptcy Court likewise held that it would "consider an award of attorneys' fees" to Fluor and directed Fluor to "submit its fee request and permit the Trust to object to any fees requested." (*Id.* at 34). To that end, the July 20 Order entered judgment in Fluor's favor in the amount of $20,657,860.59, and awarded pre-judgment interest and attorneys' fees to Fluor "as may be entered by the Court following the further submissions of the parties." (*July 20 Order at 2*) (Exhibit B hereto).

Although the July 20 Opinion and Order expressly contemplate further proceedings before the Bankruptcy Court with respect to the award of pre-judgment interest and attorneys' fees, out of an abundance of caution, and in order to avoid any potential for a

forfeiture of its rights in the event the judgment were to be deemed final for purposes of triggering the ten-day deadline for filing motions to alter or amend the judgment, on July 30, 2007, the ORC Representative filed the Reconsideration Motion pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 59(e) of the Federal Rules of Civil Procedure (the "Federal Rules") seeking vacatur and amendment, in part, of the July 20 Opinion and Order to the extent that it awarded pre-judgment interest to Fluor. Although the ORC Representative believes that the filing of the Reconsideration Motion tolled the time for filing an appeal pursuant to the provisions of Bankruptcy Rule 8002(b), to avoid a potential forfeiture of its appeal rights in the unlikely event that the Reconsideration Motion was deemed not to be of the type described in Bankruptcy Rule 8002(b), on July 30, 2007, the ORC Representative filed a Notice of Appeal (C.A. No. 07-510 D.I. 1) in the adversary proceeding and contested matter. Thereafter, on August 9, 2007, Fluor filed a Notice of Cross-Appeal (C.A. No. 07-520 D.I. 1), and on August 23 and August 27 respectively, the Clerk of Court entered notices docketing the appeal and cross-appeal and referring the cases to mediation in accordance with this Court's Standing Order of July 23, 2004.

## SUMMARY OF THE ARGUMENT

This Court should exercise its discretion to stay these actions pending disposition by the Bankruptcy Court of the Reconsideration Motion and the further proceedings contemplated in the July 20 Opinion and Order regarding Fluor's request for an award of pre-judgment interest and attorneys' fees. A stay of proceedings in this Court pending resolution by the Bankruptcy Court of those issues will serve to avoid potentially duplicative and piecemeal appeals by guaranteeing that all of the issues from which an appeal from the Bankruptcy Court may lie are addressed in a single comprehensive appellate proceeding. Further, a stay of

proceedings in this Court for what is likely to be a relatively short period of time necessary for the Bankruptcy Court to decide the Reconsideration Motion (which has been fully briefed and is currently pending before the Bankruptcy Court), and to conduct the further proceedings contemplated by the July 20 Opinion and Order with respect to Fluor's request for pre-judgment interest and attorneys' fees will not materially prejudice Fluor.

## STATEMENT OF FACTS

These appeals arise out of a parallel contested matter and adversary proceeding filed by Fluor in the chapter 11 bankruptcy case of Orion Refining Corporation ("Orion" or the "Debtor"). On February 4, 2004, Fluor filed an adversary proceeding against Orion in the Bankruptcy Court (Adv. Proc. 04-52447) seeking to recover in excess of $26 million on account of certain pre-petition work performed by Fluor for Orion, asserting enforcement of certain liens, fraud and misrepresentation, promissory estoppel and the imposition of a constructive trust. On March 5, 2004, Orion filed its answer in the adversary proceeding asserting a counterclaim against Fluor for, among other things, the avoidance and recovery pursuant to 11 U.S.C. §§ 547 and 550 of certain preferential transfers made to Fluor during the ninety days preceding Orion's bankruptcy filing.

On April 13, 2004 and May 14, 2004, respectively, Orion and Fluor filed cross-motions for summary judgment on Fluor's lien and constructive trust claims in the adversary proceeding. Following briefing and oral argument before visiting Judge Case, the adversary proceeding was eventually reassigned to the Honorable Mary F. Walrath. In an opinion and separate order entered May 9, 2006 (the "May 2006 Opinion and Order"), the Court entered partial summary judgment in Orion's favor and against Fluor, holding that Fluor had contractually waived its lien rights and there was no basis for imposition of a constructive trust.

While briefing on the parties' cross-motions for summary judgment was underway in the adversary proceeding, on June 5, 2004 Fluor separately initiated a contested matter in Orion's bankruptcy case by filing a Motion For Relief From Previously Entered Critical Fire and Trade Vendor Orders.  By that motion, Fluor sought relief pursuant to Rule 60(b) of the Federal Rules and Section 105(a) of Title 11 of the United States Code from certain orders of the Bankruptcy Court dated as of June 5, 2003 which granted the Orion the authority to pay pre-petition amounts owed to certain of its vendors that provided Orion with essential goods, services and materials in the ordinary course of its business and/or in connection with the repair of fire damage at Orion's refinery that was ongoing as of the date of Orion's May 13, 2003 bankruptcy filing (the "Rule 60(b) Motion").  In light of the pending cross-motions for summary judgment in the adversary proceeding, further proceedings on the Rule 60(b) Motion were deferred until after the May 2006 Opinion and Order.  Following the filing by the ORC Representative as post-confirmation successor to Orion of its opposition to the Rule 60(b) Motion and Fluor's reply, on July 27, 2006, the Bankruptcy Court issued an order allowing the Rule 60(b) Motion to proceed on two theories of recovery, as set forth more fully therein (the "July 27 2006 Order").

On October 23, 2006 Fluor filed a motion for summary judgment with respect to the Rule 60(b) Motion.  Following briefing and oral argument by the parties, the Court entered an order dated December 19, 2006 (the "December 2006 Summary Judgment Order") denying that motion.  Following entry of the December 2006 Summary Judgment Order, the parties engaged in discovery directed to the issues raised in the Rule 60(b) Motion and those remaining in the adversary proceeding.

A consolidated trial with respect to these matters was held in the Bankruptcy Court from May 7-9, 2007. Following receipt of the parties post-trial briefs, on July 20, 2007, the Court entered the FOF, the July 20 Opinion and the July 20 Order. In the July 20 Opinion, the Bankruptcy Court held that Fluor "is entitled to recover the principal sum of $20,657,860.58, together with pre-judgment interest, calculated with the date of reconciliation of the sum due through the date of entry of the judgment." (*July 20 Opinion at 32*). The Bankruptcy Court likewise held that it would "consider an award of attorneys' fees" in Fluor's favor and directed Fluor to "submit its fee request and permit the Trust to object to any fees requested." (*Id.* at 34). With respect to pre-judgment interest and attorneys' fees, the July 20 Order provides:

> **ORDERED** that Fluor Enterprises, Inc., shall be entitled to pre-judgment interest and attorneys' fees as may be entered by the Court after consideration of the further submissions of the parties, and it is further

> **ORDERED** that Fluor Enterprises, Inc. shall submit its request for award of pre-judgment interest and attorneys' fees within 60 days of the entry of this Order; and it is further

> **ORDERED** that the ORC Distribution Trust shall file any objection or response to the request of Fluor Enterprises, Inc., within 30 days thereafter.

Although the July 20 Opinion and Order expressly contemplate further proceedings with respect to Fluor's request for pre-judgment interest and attorneys' fees and, thus, may not be final for purposes of triggering the ten day period for filing motions pursuant to Bankruptcy Rule 9023 and Federal Rule 59(e), out of an abundance of caution and in order to avoid an possible forfeiture of its rights in the event that the July 20 Opinion and Order were deemed to be final, on July 30, 2007 the ORC Representative filed the Reconsideration Motion. By the Reconsideration Motion, the ORC Representative seeks entry of an order by the Bankruptcy Court (1) granting reconsideration, in part, of the July 20 FOF, Opinion and Order,

- 6-

and (2) upon reconsideration, (a) vacating those portions of the Opinion and Order that authorized Fluor to recover pre-judgment interest in an amount to be determined, and (b) denying any award of interest for the period prior to the date that Fluor's Claim becomes an Allowed Claim in accordance with the terms of the Amended Plan Of Liquidation of Orion Refining Corporation. Although the ORC Representative believes that the timely filing of the Reconsideration Motion tolled the time for commencing appeals in accordance with the provisions of Bankruptcy Rule 8002(b), to avoid the potential forfeiture of its rights in the event that it were concluded that the appeal period was not so tolled, later that day the ORC Representative filed a Notice of Appeal in the contested matter and adversary proceeding from (a) the FOF, (b) the July 20 Opinion, (c) the July 20 Order, and (d) the July 26, 2006 Order. On August 9, 2007, Fluor filed its Notice of Cross-Appeal (07-520 D.I. 1) from the July 20 Order and from the May 9, 2006 Opinion and Order and notices of docketing referring the cases to mediation in accordance with this Court's Standing Order of July 23, 2004 were entered in this Court on August 23 and August 27 respectively.

## ARGUMENT

It is well established that a district court has the broad power to stay proceedings to promote the interests of justice and judicial efficiency. As courts in this Circuit have observed: "A district court 'has broad discretion to stay proceedings as an incident to its power to control its own docket.' . . . The purpose of this power is to promote 'economy of time and effort for itself, for counsel, and for litigants.'" *Peerless Wall and Window Coverings, Inc. v. Synchronics, Inc.*, No. Civ. A. 98-1084, 1998 WL 906542, at *1 (W.D. Pa. Nov. 19, 1998) (Exhibit C hereto) (citations omitted); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936); *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983). In exercising this discretion, "the Court must weigh the competing interests of the parties and attempt to

maintain an even balance." *Dentsply Int'l, Inc. v. Kerr Manufacturing Co.*, 734 F.Supp. 656, 658 (D. Del. 1990).

As a result of the Bankruptcy Court's July 20 Opinion and Order, which leave open for further proceedings the determination of certain issues concerning Fluor's entitlement to pre-judgment interest and attorneys' fees, and the filing by the ORC Representative of the Reconsideration Motion, there remain a number of matters that remain to be addressed by the Bankruptcy Court. Putting aside whether the pendency of those issues renders ineffective the parties' cross-appeals in this Court under Bankruptcy Rule 8002(b)[1] or otherwise, it would be premature and wasteful for these appellate proceedings to proceed while those issues which may impact or enlarge the issues currently on appeal, remain to be decided in the Bankruptcy Court.

Nor is there any prejudice to Fluor should this Court exercise its discretion to stay these proceedings pending disposition by the Bankruptcy Court of the Reconsideration Motion and further proceedings regarding Fluor's request for pre-judgment interest and attorneys' fees in accordance with the procedure and schedule set forth in the July 20 Opinion and Order. As it stands, the ORC Representative's Reconsideration Motion has been fully briefed and a request for oral argument and certificate of completion of briefing have been filed in the Bankruptcy Court. Further, under the schedule set by the Bankruptcy Court for the parties' submissions on pre-judgment interest and attorneys' fees, those matters will be fully briefed and ripe for consideration by the Bankruptcy Court no later than October 18, 2007, which is the last day set for submission by the Trust of its objection to Fluor's request for an award of pre-judgment

---

[1]    Bankruptcy Rule 8002(b) broadly provides that "[a] notice of appeal filed after announcement or entry of the judgment, order or decree but before disposition of any of the above motions [expressly including a motion to alter or amend the judgment under Bankruptcy Rule 9023] is ineffective to appeal from the judgment, order or decree, or part thereof specified in the notice of appeal, until the entry of the order disposing of the last such motion outstanding" and that "[a]ppellate review of an order disposing of any of the above motions, requires the party, in compliance with Rule 8001, to amend a previously filed notice of appeal."

interest and attorneys' fees.    In these circumstances, the ORC Representative respectfully submits that Fluor will not be prejudiced as the result of a stay of the appellate proceedings for what is likely to be a relatively short period necessary to enable the Bankruptcy Court to resolve these issues that remain before it.

### REQUEST FOR WAIVER OF FILING OF MEMORANDUM OF LAW

In light of the nature of the relief requested, and because this Motion raises no novel issues of law, the ORC Representative respectfully requests that this Court dispense with the requirement for the submission of a memorandum of law contained in D. Del. L.R. 7.1.2, except that the ORC Representative reserves its right to file a reply brief in support of this Motion.

WHEREFORE, for all of the foregoing reasons, the ORC Representative respectfully requests that the Court enter an order staying the proceedings in the above-captioned appeals pending disposition by the Bankruptcy Court of the Reconsideration Motion and the further proceedings regarding Fluor's request for pre-judgment interest and attorneys' fees contemplated in the July 20 Opinion and Order.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


___Donna L. Culver_____
William H. Sudell, Jr. (#463)
Donna L. Culver (#2983)
Gregory W. Werkheiser (#3553)
Thomas W. Briggs, Jr. (#4076)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200

Attorneys for Cypress Associates, LLC, as the representative of the ORC Distribution Trust

August 30, 2007

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| ORION REFINING CORPORATION, | ) | Case No. 03-11483(MFW) |
| | ) | |
| Debtor. | ) | Related Documents: 1283 and |
| _____ | ) | 1788 |
| FLUOR ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 04-52447(MFW) |
| | ) | |
| ORION REFINING CORPORATION, | ) | |
| CYPRESS ASSOCIATES, LLC as | ) | |
| ORC DISTRIBUTION TRUST | ) | |
| REPRESENTATIVE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ORION REFINING CORPORATION, | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FLUOR ENTERPRISES, INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**OPINION**[1]

Before the Court are the Complaint and Motion of Fluor

Enterprises, Inc. ("Fluor") seeking payment of its pre-petition

claims totaling $20,657,860.58 on theories of breach of contract,

promissory estoppel, misrepresentation, and under the Critical

_____

[1] This Opinion, and the accompanying Findings of Fact
("FOF"), constitute the findings of fact and conclusions of law
of the Court pursuant to Rule 7052 of the Federal Rules of
Bankruptcy Procedure.

Fire Vendor Order entered by the Court early in this chapter 11 case.  The ORC Distribution Trust (the "Trust") opposes the relief sought.  For the reasons set forth below, the Court will grant the relief requested by Fluor and direct the payment of its claims in full.

I.    BACKGROUND

     The background of this case is reflected in the Court's Opinion dated May 9, 2006, and in the Court's Findings of Fact ("FOF") which are attached hereto and incorporated herein by reference.  A summary of the relevant facts is presented here.

     Orion Refining Corporation ("Orion") operated an oil refinery in Norco, Louisiana (the "Refinery").  On May 20, 2002, it executed a Master Service Agreement (the "MSA") with PSC Industrial Outsourcing, Inc. ("PSC"), which was subsequently assigned to Fluor on March 3, 2003.  The MSA called for PSC (and Fluor) to perform various services, including management, mechanical, industrial, and oil spill/hazardous material emergency response services at the Refinery.

     On January 29, 2003, the Refinery (and principally its coker unit) was damaged by fire.  As a result, Orion determined to expand PSC's duties under the MSA to make it the general contractor for the repair of the coker unit.  Orion thereafter issued hundreds of Work Assignments to PSC, and later to Fluor,

2

under the MSA for the repair of the coker unit.

Orion filed a voluntary petition for relief under chapter 11
of the Bankruptcy Code on May 13, 2003 (the "Petition Date").
Orion also filed a Motion for Authority to Pay Certain Fixed,
Liquidated and Undisputed Prepetition Claims of Fire Vendors,
Mechanics and Materialmen (the "Critical Fire Vendor Motion") and
a separate Motion for Authority to Pay Prepetition Obligations of
Certain Critical Vendors and Service Providers Pursuant to
Sections 105(a) and 363(b) of the Bankruptcy Code (the "Critical
Vendor Motion").  (FOF 71)

As the general contractor on the coker rebuild, Fluor was
the largest and most important of the Critical Fire Vendors.
(FOF 31, 33-34, 53-54, 57, 63-64, 83, 85, 95, 97-98, 105, 111,
136, 144-46)  On numerous occasions (both before and after the
bankruptcy case was filed), Orion emphasized to Fluor the
importance of Fluor staying on the job and finishing the coker
rebuild in a timely fashion.  (FOF 53-54, 63-64, 93, 95, 97-98,
103-107, 111)  Orion's representatives told Fluor that if it
finished the coker rebuild, its pre-petition claims would be
treated as Critical Fire Vendor claims and paid in full.  (FOF
53-54, 63-64, 93, 95, 97-98, 103-107, 111)  Fluor continued on
the job and the coker rebuild was finished ahead of schedule on
June 5, 2003, approximately three weeks after the Petition Date.
(FOF 112-13)

3

Shortly after it had filed for bankruptcy, Orion filed a Motion for approval of a sale of the Refinery to Valero Energy Corporation and Valero Refining - New Orleans, LLC (collectively "Valero"). The purchase agreement contemplated that the Refinery would be repaired before closing on the sale; if not, funds would be escrowed until completion. The Court granted the sale motion on June 26, 2003.

After the sale closed in early July 2003, Orion refused to pay Fluor's pre-petition claims, asserting that it had claims against Fluor as well. (FOF 125) On August 17, 2005, Orion filed an action against Fluor in Louisiana, alleging that the Refinery fire was caused by the negligence and other wrongful acts of Fluor. (FOF 126)

On February 4, 2004, Fluor filed a Complaint against Orion to recover its pre-petition claims for fire restoration, maintenance, and the work done on the coker rebuild. (FOF 4) The Complaint contained four counts. Count I asserted a mechanics' lien against the Refinery under the Louisiana Private Works Act and, thus, the right to sale proceeds placed in escrow. (Id.) Count II alleged fraud and misrepresentation. (Id.) Count III asserted promissory estoppel. (Id.) Count IV asserted a constructive trust against the sale proceeds. (Id.) On June 3, 2004, Fluor filed a Motion for Relief from Previously Entered Critical Fire and Trade Vendor Orders ("Motion for Relief"),

4

which also sought payment of the pre-petition claims.  (FOF 7)
The Trust[2] opposed both the Motion and the Complaint.  (FOF 5,8)

In an Opinion dated May 9, 2006, the Court denied Fluor's
motion for partial summary judgment and granted the Trust's
motion for partial summary judgment on Counts I and IV of the
Fluor Complaint.  (FOF 10)  The Court held that Fluor could not
recover under Count I because under the MSA it had waived its
right to impose a mechanics' lien.  Fluor Enterprises, Inc. v.
Orion Refining Corp. (In re Orion Refining Corp.), 341 B.R. 476,
481 (Bankr. D. Del. 2006).  The Court further concluded that
Count IV failed because Louisiana law (the law applicable to the
issue) did not recognize the remedy of constructive trust.  Id.
at 482-85.[3]

In an Order dated July 27, 2006, the Court determined that
Fluor could continue to prosecute its action asserting that Orion
was obligated to pay Fluor's pre-petition claims in full based on
its contention that (1) there was an agreement between Fluor and
Orion that Fluor was a Critical Fire Vendor and that its pre-

---

[2]  On May 12, 2004, Orion was succeeded by the Trust under
the Amended Plan of Liquidation.  The Trust also filed a
counterclaim in the Complaint, asserting entitlement to recover
alleged preferences in the amount of $1,951,888.47.  The Trust
has withdrawn that counterclaim.

[3]  Fluor appealed the Court's May 10 Opinion and Order.  On
August 11, 2006, the District Court dismissed the appeal, without
prejudice, because the May 10 Opinion and Order disposed of fewer
than all the claims in the adversary proceeding.

petition claims would be paid in full if it completed the coker rebuild or (2) Orion misrepresented that Fluor would be paid in full when the coker rebuild was done and Fluor detrimentally relied on those misrepresentations by completing that work.  The Court ordered a consolidated trial of Fluor's Complaint and its Motion for Relief on those two theories.

Trial was held on May 7, 8, and 9, 2007.  Post-trial briefs were filed by the parties on June 20 and July 5, 2007.  The matter is ripe for decision.

II.  <u>JURISDICTION</u>

This is a core proceeding, and the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B), & (O).

III. <u>DISCUSSION</u>

A.  <u>Choice of Law</u>

Fluor's claims for breach of contract and misrepresentation arise under state common law.  <u>See, e.g.</u>, <u>United States v. Texas</u>, 507 U.S. 529, 534 (1993) (holding that fraud claims arise under state law); <u>In re III Enterprise, Inc.</u>, 163 B.R. 453, 459 (Bankr. E.D. Pa. 1994) (concluding that issue of whether a valid contract exists is a question of state law).

Both federal common law and Delaware law apply section 188 of the Restatement (Second) Conflict of Laws.  See, e.g., In re Miller, 292 B.R. 409, 413 (B.A.P. 9th Cir. 2003); Oliver B. Cannon & Son v. Dorr-Oliver, Inc., 394 A.2d 1160, 1166 (Del. 1978); Viking Pump, Inc. v. Liberty Mut. Ins. Co., No. Civ. A. 1465-VCS, 2007 WL 1207107, at *26 n. 113 (Del. Ch. Apr. 13, 2007).  Section 188 of the Restatement weighs various factors in determining which law to apply, including: (1) where the contract was negotiated, (2) the place of performance, (3) the location of the subject matter of the contract, and (4) the place of incorporation and place of business of the contracting parties. See, e.g., Viking Pump, 2007 WL 1207107, at *26 n. 113; Miller, 292 B.R. at 413.  In this case, those factors weigh in favor of applying Louisiana law.  The statements by representatives of Orion which support Fluor's claims were all made in Louisiana. Fluor's performance occurred in Louisiana.  The subject of the alleged agreement was the coker unit, which was located at the Refinery in Louisiana.  Orion's business was at all relevant times located in Louisiana.

Consequently, under both federal common law and Delaware's conflict of laws rules, Fluor's claims are governed by Louisiana law.  See also Orion Ref. Corp., 341 B.R. at 484-85.

B.    <u>Agreement to Pay Pre-Petition Claims</u>

Fluor asserts that an agreement was reached between it and Orion whereby Orion agreed to pay Fluor's pre-petition claims in full if Fluor completed the coker rebuild without delay.  Fluor presented evidence of numerous conversations and meetings it had with Orion's representatives establishing that agreement.  (FOF 53-54, 63-64, 93, 95, 97-98, 103-07, 111)

Under Louisiana law, there are four elements necessary for a contract: (1) capacity, (2) consent, (3) lawful cause, and (4) an object.  La. Civ. Code Ann. arts. 1918, 1927, 1966, 1971 (1987). <u>See, e.g.</u>, <u>Prestridge v. Elliot</u>, 847 So. 2d 789, 791-92 (La. Ct. App. 2003).  Fluor bears the burden of establishing all four elements by a preponderance of the evidence.  <u>See, e.g.</u>, <u>Adams v. Commercial Nat. Bank in Shreveport</u>, 661 So. 2d 636, 639 (La. Ct. App. 1995).

1.    <u>Capacity</u>

The oral statements upon which Fluor relies are primarily statements of Eric Bluth, Orion's Chief Operating Officer.  (FOF 53-54, 63-64, 93, 95, 97-98, 103-07, 111)  As COO and the senior client representative for Orion in its relationship with Fluor, Bluth had actual authority to bind Orion.  "All persons have capacity to contract, except unemancipated minors, interdicts, and persons deprived of reason at the time of contracting."  La. Civ. Code Ann. art. 1918 (1987).  "The principal may confer on

the mandatary [agent] general authority to do whatever is appropriate under the circumstances." La. Civ. Code Ann. art. 2994 (2005). "The mandatary [agent] may perform all acts that are incidental to or necessary for the performance of the mandate. The authority granted to a mandatary [agent] to perform an act that is an ordinary part of his profession or calling, or an act that follows from the nature of his profession or calling, need not be specified." La. Civ. Code Ann. art. 2995 (2005). "The principal is bound to perform the contract that the mandatary [agent], acting within the limits of his authority, makes with a third person." La. Civ. Code Ann. art. 3020 (2005). See generally Restatement (Third) of Agency § 2.01 (2006) ("An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent to act.").

Further, as COO and the main Orion representative dealing with Fluor on the coker rebuild, Bluth had apparent authority to bind Orion on matters relating to that subject. "One who causes a third person to believe that another person is his mandatary [agent] is bound to the third person who in good faith contracts with the putative mandatary [agent]." La. Civ. Code Ann. art. 3021 (2005). See generally Restatement (Third) of Agency § 2.03

9

(2006) ("Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.").

The Trust contends that when Steven L. Victor was hired as Orion's CRO, Victor instructed Orion's senior management that they did not have the authority to make any deals with vendors regarding their pre-petition claims. The Trust suggests that Victor alone had the authority to negotiate with Critical Fire Vendors. Therefore, it argues that the statements on which Fluor relies were misunderstood by Fluor or could not reasonably have been relied upon by Fluor.

The Court disagrees. Although Victor was installed as Orion's CRO in April 2003, that had no effect on the corporate authority of other members of Orion's senior management, including Bluth. (FOF 46) Fluor was told that Victor would be dealing with Orion's bankruptcy case, but that did not deprive Orion's other officers of their authority, even in matters involved in the bankruptcy case. (FOF 46)

Additionally, Bluth's statements to Fluor were ratified by other members of Orion's senior management including Clark Johnson, Orion's Chief Executive Officer, Richard Rayzor, Orion's Chief Financial Officer, and even by Victor himself. (FOF 93-95,

97-99, 105-10, 146-48)  See generally Restatement (Third) of

Agency § 4.01 (2006) ("Ratification is the affirmance of a prior

act done by another, whereby the act is given effect as if done

by an agent acting with actual authority. . . .  A person

ratifies an act by (a) manifesting assent that the act shall

affect the person's legal relations, or (b) conduct that

justifies a reasonable assumption that the person so consents.").

In calls and meetings with Fluor after Bluth had promised

that Fluor's pre-petition claims would be paid in full, neither

Rayzor nor Victor rescinded Bluth's statements.  (FOF 109, 148)

Specifically, in the May 16 and 20 discussions, neither Victor

nor Rayzor told Fluor that its pre-petition claims would not be

paid in full.  (FOF 97-99, 105-09)  While Victor told Fluor that

it was on the Critical Fire Vendor list for only $3.7 million, he

suggested that Fluor submit its invoices so they could be

reconciled and paid.  (FOF 106-07)  This reiterated and

reinforced the statements made by Bluth: that if Fluor continued

with the coker rebuild, then Fluor would be paid its pre-petition

claims in full, subject only to Fluor submitting and reconciling

its invoices.  (FOF 53-54, 63-64, 93, 95, 97-98, 103-07, 111)

    2.  Consent

The element of consent requires an offer and an acceptance.

La. Civ. Code Ann. art. 1927 (1987) ("A contract is formed by the

consent of the parties established through offer and acceptance.

Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.  Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made."). See, e.g., Imperial Chemicals Limited v. PKB Scania, 929 So. 2d 84, 90 (La. Ct. App. 2006); Grasso v. First USA Bank, 713 A.2d 304, 308 (Del. Super. Ct. 1998).  See generally Restatement (Second) of Contracts §§ 24 & 32(2) (1981) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it," and "[t]he terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.").

Fluor contends that Orion made an offer to Fluor, in their post-petition calls and meetings, that Orion would pay all amounts accrued pre-petition as calculated under the MSA if Fluor completed the coker rebuild.  (FOF 53-54, 63-64, 93, 95, 97-98, 103-07, 111)  Fluor argues that this offer was sufficiently definite to form the basis of an enforceable agreement upon acceptance by Fluor.

The Trust argues that there was no offer made by Orion and no agreement between the parties.  The Trust asserts that any statements made by Orion's representatives were conditional: that the Court had to approve the Critical Fire Vendor Motion, that Fluor had to be on the list in an agreed amount, and that the terms of the post-petition relationship had to be confirmed in a Trade Agreement.  The Trust contends that while the parties discussed these issues, no agreement was reached.  Where terms are left open or uncertain, there can be no agreement.  See, e.g., Villars v. Edwards, 412 So. 2d 122, 124 (La. Ct. App. 1982) (finding no agreement where contractor claimed price quoted was a "ballpark" estimate).  The Trust especially notes that no written Trade Agreement was executed, as contemplated by the Critical Fire Vendor Order and as expected for such a large and complicated claim.

The Court disagrees.  Though Orion did state that the payment of Fluor's pre-petition claims was conditional, all the conditions were met.  The Court did approve the Critical Fire Vendor Motion, Fluor was included on the Critical Fire Vendor list, and Orion and Fluor did ultimately agree on the correct amount of Fluor's pre-petition claims.  (FOF 78-79, 85, 134)

The Court concludes further that there was no necessity for a written agreement.  The Critical Fire Vendor Motion and Order both expressly state that the execution of a Trade Agreement was

13

not a prerequisite to payment. (FOF 74, 78-79, 150) Through the MSA, the numerous work orders issued under the MSA, and an extensive course of dealing, all the material terms of the agreement between Orion and Fluor, including all terms necessary to calculate the amount owed for work done pre-petition, had been established and were in place as of the Petition Date. (FOF 21)

The Trust argues nonetheless that the statements made by Bluth were not an offer or agreement to pay Fluor its pre-petition claims; instead, the Trust contends that Orion only stated that it "intended" to pay Fluor.

The Court concludes that this is a distinction without meaning. Fluor clearly understood Bluth to be making an offer. Additionally, Orion acted as if it were an offer; Orion coupled its statements of its "intent" to pay the pre-petition claims with its request that Fluor continue the coker rebuild without interruption. The Court concludes, therefore, that the statements made by the Orion representatives constituted an offer to Fluor: if Fluor completed the coker rebuild, its pre-petition claims would be paid in full.

The Court further finds that Fluor accepted the offer from Orion by making a conscious decision (at least by May 16, 2003) to take all steps necessary to complete the repairs. Thus, the Court finds that Fluor accepted the offer by its actual performance in continuing and completing the coker rebuild. La.

14

Civ. Code Ann. art. 1939 (1987) ("When an offeror invites an offeree to accept by performance and, according to usage or the nature or the terms of the contract, it is contemplated that the performance will be completed if commenced, a contract is formed when the offeree begins the requested performance."). <u>See, e.g.</u>, <u>Woods v. Morgan City Lions Club</u>, 588 So. 2d 1196, 1200 (La. Ct. App. 1991) (stating that "[o]nce an offer is made, consent to a contract need not be expressed in words but may be implied by actions of the parties"); <u>Myers v. Myers</u>, 532 So. 2d 490, 496 (La. Ct. App. 1988) (noting that "[c]onsent to an obligation can be shown by performance and/or by silence"). <u>See generally</u> Restatement (Second) of Contracts §62(1)-(2) (1981) ("Where an offer invites an offeree to choose between acceptance by promise and acceptance by performance, the tender or beginning of the invited performance or a tender of a beginning of it is an acceptance by performance."); 1-3 Arthur Linton Corbin, et. al., Corbin on Contracts § 3.8 at n. 18 (2006) ("If one offers a promise to pay for specified construction or for service over a period of time, the beginning of the work so that it is known by the offeror may be a sufficient acceptance to bind both parties by mutual promises.") (<u>citing</u> <u>Fujimoto v. Rio Grande Pickle Co.</u>, 414 F.2d 648 (5th Cir. 1969)).

The Trust argues that there is no evidence that Fluor accepted any offer, because on June 6 Fluor was still considering

its other options.   (JTX 76)   Further, it contends that the fact
that Fluor and Orion continued to negotiate afterwards proves
that there was no agreement.

The Court disagrees.   In fact, the internal Fluor meeting on
June 6 was <u>after</u> the coker rebuild was complete and, therefore,
after Fluor had fully performed the post-petition agreement.[4]   By
that time, however, Orion had not performed any part of its
agreement; Fluor had received no payments for its pre-petition
claims.   Therefore, it is understandable that Fluor was
considering its options for how to get its pre-petition claims
paid.   The Court concludes that the June 6 presentation is
evidence that the parties were still trying to reconcile the
amount due, not that there was no agreement that the pre-petition
claims would be paid.

Thus, the Court concludes that Fluor has established that
there was a meeting of the minds to pay Fluor all of its
pre-petition claims under the Critical Fire Vendor Order if Fluor
continued to work and completed the coker rebuild.

3.   <u>Lawful Cause</u>

Another necessary element to a contract under Louisiana law
is "lawful cause."   La. Civ. Code Ann. art. 1966 (1987) ("An

---

[4]   It is important to remember that all the relevant events
occurred within a very short time frame.   The coker rebuild was
completed approximately three weeks after the bankruptcy case was
filed.

16

obligation cannot exist without a lawful cause.").  The
performance of, or promise to perform, an existing legal
obligation does not constitute lawful cause.  See, e.g., Arkansas
Louisiana Co. v. R.O. Roy & Co., 198 So. 768, 772 (La. 1940);
Castano v. Bellina, 503 So. 2d 195, 198 (La. Ct. App. 1987);
Standard Electric Construction Co. v. Frick Co., 134 So. 322,
322-23 (La. Ct. App. 1931).

     The Trust argues that there was no lawful cause for any
agreement made by it to pay Fluor, because Fluor's agreement to
complete the coker rebuild was merely a promise to perform a
legal obligation it already had.  The Trust asserts that the
February 4 Work Assignment (whereby Fluor became the general
contractor on the rebuild) was an executory contract, which Fluor
was obligated to perform.  After Orion commenced its chapter 11
proceeding, but before executory contracts were assumed or
rejected under section 365(a) of the Bankruptcy Code, the Trust
contends that the Fluor contract remained in existence and
enforceable by Orion, but not against it.  See, e.g., U.S. Postal
Service v. Dewey Freight Sys., Inc., 31 F.3d 620, 624 (8th Cir.
1994) (citing NLRB v. Bildisco & Bildisco, 465 U.S. 513, 532
(1984)); In re University Medical Center, 973 F.2d 1065, 1075 (3d
Cir. 1992).

Fluor argues that the cases cited by the Trust do not stand for that proposition.[5]  The Court finds it unnecessary to decide this issue because it concludes that there was lawful cause for Orion's promise to pay Fluor's pre-petition claims.  Until the parties reached an agreement post-petition, Fluor was not legally obligated to complete the coker rebuild.  While there may have been Work Assignments still pending, the completion of the coker rebuild required numerous additional specific Work Assignments. (FOF 28)  Fluor had the right under the MSA to refuse to accept any new Work Assignments.  (FOF 29)

Further, even if the contract to complete the coker rebuild was executory, Fluor could have filed a motion to compel Orion to assume or reject that contract.  If the contract was assumed, Orion would have been obligated to pay all pre-petition claims due to Fluor on that contract.  11 U.S.C. § 365(b)(1).  Further, although many of the Critical Fire Vendors had executory contracts which Orion felt it could enforce, Orion told the Court at the hearing on approval of the Critical Fire Vendor Motion

---

[5]  Fluor argues that the statement in <u>Dewey Freight</u> that executory contracts are "enforceable by the debtor" against the non-debtor was mere <u>dicta</u>.  31 F.3d at 624.  The Supreme Court in <u>Bildisco</u> held only that a non-debtor could not enforce an executory contract against a debtor.  465 U.S. at 532. Similarly, the Third Circuit in <u>University Medical Center</u> held that an executory contract may not be enforced against a debtor until it is assumed or rejected.  973 F.2d at 1075.  Therefore, Fluor asserts that there is no support for the Trust's contention that Fluor had to perform the February 4 Work Assignment.

that the possible disruption caused by seeking enforcement of
those contracts could have detrimental effects on the estate by
delaying the coker rebuild.  (FOF 75)  Accordingly, Orion
obtained authority to pay up to $21.6 million in pre-petition
debt owed to Critical Fire Vendors, whether they had an executory
contract, executed a Trade Agreement, or had pre-petition debt
unrelated to the coker rebuild.  (FOF 74-77)

Thus, the Court concludes that there was a lawful purpose
for the agreement between Orion and Fluor that Orion would pay
Fluor its pre-petition claims if Fluor finished the coker
rebuild.

          4.   Object

"Parties are free to contract for any object that is lawful,
possible, and determined or determinable."  La. Civ. Code Ann.
art. 1971 (1987).  There is no dispute that the object of the
agreement in this case was the completion of the coker rebuild.

Consequently, the Court concludes that all elements
necessary for the formation of a contract were established.
Orion agreed to pay Fluor its pre-petition claims in full if
Fluor completed the coker rebuild.  Orion has breached that
agreement.

     C.   Promissory Estoppel

Fluor also argues that the facts support its claim under a
theory of promissory estoppel.  See generally Restatement

19

(Second) of Contracts § 90(1) (1981) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.").  Fluor contends that in a commercial setting where damages are not speculative, "promissory estoppel is routinely used as a basis for awarding full expectation damages," particularly where the promisee has conferred a bargained-for benefit on the promisor, in order to avoid unjust enrichment.  See Mary A. Becker, Promissory Estoppel Damages, 16 Hofstra L. Rev. 131, 141 & 155 (1987) (expectation damages are appropriate where promissory estoppel is invoked in a case of lack of consideration or negligent or reckless misrepresentation).

The Trust argues that Louisiana law does not recognize a claim for promissory estoppel.  See, e.g., Morris v. Friedman, 663 So. 2d 19, 26 (La. 1995).  The Trust does acknowledge, however, that Louisiana has an analogous cause of action called detrimental reliance.  See La. Civ. Code Ann. art. 1967 (1987) ("A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.  Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the

20

promise.  Reliance on a gratuitous promise made without required formalities is not reasonable.").  Nonetheless, the Trust contends that detrimental reliance is a disfavored doctrine under Louisiana law and should not be applied in this case.  See, e.g., Maddox v. Keen, 756 So. 2d 1279, 1283 (La. Ct. App. 2000) (detrimental reliance is "sparingly applied as it bars the normal assertion of rights otherwise present.").

In order to prove a claim for detrimental reliance under Louisiana law, Fluor must establish by a preponderance of the evidence that: (1) a representation was made, (2) Fluor reasonably and justifiably relied on that representation, and (3) Fluor changed its position to its detriment as a result of that reliance.  See, e.g., Water Craft Management L.L.C. v. Mercury Marine, 361 F.Supp. 2d 518, 556 (M.D. La. 2004); Carter v. Huber & Heard, Inc., 657 So. 2d 409, 411 (La. Ct. App. 1995); Daigle Brothers Sand & Dirt, Inc. v. Sec'y of the Dept. of Revenue & Taxation, 594 So. 2d 935, 937 (La. Ct. App. 1992).

The Court concludes that Fluor has established a case for detrimental reliance.  As found above, Orion did make a promise to Fluor which it reiterated several times: if Fluor completed the coker rebuild, Orion would pay Fluor's pre-petition claims in full.  (FOF 53-54, 63-64, 93, 95, 97-98, 103-07, 111)  Fluor relied on that promise by completing the coker rebuild ahead of schedule in a workman-like manner.  (FOF 112-13)  Fluor's

reliance was justified given the fact that Orion had filed a
Critical Fire Vendor Motion which was approved by the Court with
a sufficient cap to cover Fluor's pre-petition claims and Orion
had acknowledged that Fluor was a Critical Fire Vendor. (FOF 53-
54, 63-64, 78-79, 93, 95, 97-98, 103-07, 111) Finally, Fluor
changed its position by completing the coker rebuild rather than
exercising its other options such as walking off the job or
filing a motion to compel Orion to assume or reject the MSA.
(FOF 88-89, 112-13)

Therefore, the Court concludes that even in the absence of
an agreement, there is ample evidence in the record to apply the
doctrine of detrimental reliance under Louisiana law to grant
damages suffered by Fluor as a result of its reliance on Orion's
commitments.

D.    Misrepresentations by Orion

Fluor argues alternatively that, even if there was no
agreement, Orion misrepresented its intentions to Fluor, who
relied on them to its detriment resulting in recoverable damages.
Fluor contends that, if Orion was not making an offer by its
statements, then its representations were misleading. It notes
that Victor himself admitted that Bluth's statements that Orion
intended to pay Fluor's pre-petition claims in full "could be
misleading." (FOF 149)

22

The elements of fraudulent misrepresentation under Louisiana law are: (1) the intent to defraud or gain an unfair advantage, (2) reliance by the other party, and (3) resulting damage.  La. Civ. Code Ann. art. 1953 (1987) ("Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.  Fraud may also result from silence or inaction.").  <u>See, e.g.</u>, <u>Hall v. Arkansas-Louisiana Gas Co.</u>, 368 So. 2d 984 (La. 1979); <u>Dutton & Vaughan, Inc. v. Spurney</u>, 600 So. 2d 693, 698 (La. Ct. App. 1992); <u>Home Indem. Co., Inc. v. Boe</u>, 499 So. 2d 1301 (La. Ct. App. 1986); <u>Automatic Coin Enterprises, Inc. v. Vend-Tronics, Inc.</u>, 433 So. 2d 766 (La. Ct. App. 1983).  As the plaintiff, Fluor bears the burden of proving each element of its claim.  <u>See, e.g.</u>, <u>Chiarella v. Sprint Spectrum LP</u>, 921 So. 2d 106, 123 (La. Ct. App. 2005).

### 1.    <u>Intent to Defraud</u>

The Trust argues that the statements on which Fluor relies were merely statements of intent concerning future events.  As such, it contends that they cannot form the basis of a misrepresentation claim, because under Louisiana law statements of intention or promises to perform an act in the future cannot support a claim for fraud unless the party making the statement actually did not intend to complete the act at the time the statement was made.  <u>See, e.g.</u>, <u>America's Favorite Chicken Co. v.</u>

23

Cajun Enterprises, Inc., 130 F.3d 180, 186 (5th Cir. 1997)
("Under Louisiana law, a cause of action exists for fraudulent
misrepresentation of past or present facts; 'unfulfilled promises
or statements as to future events,' however, cannot be the basis
for a fraud action.") (emphasis in original) (internal citations
omitted); Sun Drilling Products Corp. v. Rayburn, 798 So. 2d
1141, 1152 (La. Ct. App. 2001) ("Fraud, however, cannot be
predicated on unfulfilled promises or statements as to future
events."); Bass v. Coupel, 671 So. 2d 344, 351 (La. Ct. App.
1996) ("Statements promissory in their nature and relating to
future actions do not constitute actionable fraud."); Dutton v.
Vaughan, Inc., 600 So. 2d 693, 698 (La. Ct. App. 1992) ("Fraud .
. . cannot be predicated on unfulfilled promises or statements as
to future events."); Chrysler Credit Corp. v. Seemann, 470 So. 2d
329, 331 (La. Ct. App. 1985) (failure to perform future act does
not support claim for fraud).

        The Trust contends that there is no evidence that Bluth and
the other Orion representatives lacked the intent to pay Fluor at
the time they informed Fluor that Orion intended to name it a
Critical Fire Vendor.  Accordingly, it argues that Fluor has not
established a necessary element to support its claim of
misrepresentation.

        The Court disagrees.  If the statements made by Orion's
representatives were not an offer to pay Fluor if it completed

the coker rebuild, then the Court concludes that they were misrepresentations.  While the Court does not believe that Bluth intended to defraud Fluor, the Court believes that Victor did. Victor testified that representations by Orion that it would pay Fluor's pre-petition claims in full could be misleading because of the fact that Fluor was listed on the internal Critical Fire Vendor list at a fraction of its pre-petition claims.  (FOF 34) Victor himself was present when some of these representations were made to Fluor, on May 16 and 20, 2003.  (FOF 97-99, 102-10) In neither instance did Victor correct the misleading statements. (FOF 109, 148)  Although Victor told Fluor that the amount of its pre-petition claims was different from what Orion had listed, he urged Fluor to submit invoices for the pre-petition work.  (FOF 105-07)  Victor never told Fluor that once those invoices were submitted they would <u>not</u> be paid.  (FOF 109)  In fact, the implication was that they <u>would</u> be paid.

The Court concludes that Victor (and, therefore, Orion) had the intent to defraud Fluor by leading it to believe that it would be paid in full if it completed the coker rebuild, even though Victor knew that Fluor would not be paid.

>           2.   <u>Justifiable Reliance</u>

The Trust also contends that Fluor cannot show that it justifiably relied upon any representations by Orion.  The Trust asserts that, at all times, Orion emphasized to Fluor that

payment was conditioned on numerous factors, which were beyond its control, namely, Court approval, availability of funds, and reconciliation.  According to the Trust, any reliance by Fluor on statements that Orion intended to pay it were not justified because the satisfaction of these events was uncertain.

The Court disagrees.  While the statements by Orion were conditional, all the conditions were met: the Court did approve the Critical Fire Vendor Motion, Fluor was identified as a Critical Fire Vendor (in fact, the Critical Fire Vendor), and the parties did agree on the terms of their post-petition relationship.  (FOF 21, 78-79, 85)  Although that relationship was not reduced to a written Trade Agreement, the Critical Fire Vendor Order specifically provided that such an agreement was not necessary.  (FOF 74)  Finally, the amount due to Fluor was ultimately reconciled by the parties.  (FOF 134)

The Court finds that the delay in reconciliation was largely Orion's fault, either from a purposeful effort to avoid paying Fluor until after the coker rebuild was completed (at which time it would refuse to pay) or simply because Orion had other pressing matters.  In either event, because Orion said it would pay Fluor's pre-petition claims in full, it was not necessary that the amount be reconciled for Fluor to justifiably rely on that representation.

26

3.    Damages

The Trust finally argues that Fluor has not established that it was injured (acted to its detriment) as a result of its purported reliance.  The Trust asserts that Fluor suffered no harm from its completion of the project in reliance on Orion's promises to pay for the pre-petition claims because Fluor was paid in full for its post-petition work and, therefore, has been fully compensated for any post-petition benefit it conferred on the estate.  See, e.g., In re Patch Graphics, 58 B.R. 743, 745 (Bankr. W.D. Wis. 1986) (administrative claim allowed only to extent that benefit was conferred on the estate).  See also In re Nat'l Steel Corp., 316 B.R. 287, 300 (Bankr. N.D. Ill. 2004); In re Bridgeport Plumbing Prods., Inc., 178 B.R. 563, 567-68 (Bankr. M.D. Ga. 1994); In re Express One Int'l, Inc., 217 B.R. 207, 211 (Bankr. E.D. Tex. 1998).

The Court disagrees with the Trust.  Orion's representations did cause Fluor to act to its detriment: it finished the coker rebuild ahead of schedule without first acting to protect its pre-petition claims.  (FOF 112-13)  If Fluor had not relied on Orion's promises to pay for the pre-petition claims, Fluor would have had several options, including filing a motion to force Orion to assume its executory contract.  If that had been filed, and Orion had assumed the contract, then Orion would have had to pay Fluor's pre-petition claims in full.  11. U.S.C. § 365(b)(1).

27

It is likely that Orion would have assumed the contract given Fluor's important role in the coker rebuild.  Orion stated at the hearing on the Critical Fire Vendor Motion that it wanted authority to pay Critical Fire Vendors even if Orion could enforce an executory contract against them, because of the harm the estate would suffer if the coker rebuild were delayed by litigation over enforceability of such contracts.  (FOF 72-77)

Consequently, the Court concludes: (1) if there was no agreement between the parties for the payment of Fluor's pre-petition claims, then Orion mislead Fluor into believing that it would pay those claims; (2) Fluor reasonably relied on Orion's misrepresentations and Fluor acted to its detriment by completing the coker rebuild; and (3) Fluor has established it is entitled to damages for the harm caused by its reliance on those misrepresentations.

E.    Amount of Damages

1.    Compensatory Damages

Because Fluor fully performed all its obligations under the post-petition agreement with Orion, Fluor is entitled to recover its "expectancy" as the measure of damages for Orion's failure to pay.  La. Civ. Code Ann. art. 1995 (1987) ("Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived."). See generally Restatement (Second) of Contracts § 347 (1981) ("[T]he injured party has a right to

28

damages based on his expectation interest as measured by (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less (c) any cost or other loss that he has avoided by not having to perform."); 11-55 Arthur Linton Corbin et al., Corbin on Contracts §55.3 (2006) ("In determining the amount of compensation as the 'damages' to be awarded [for a breach of contract], the aim in view is to put the injured party in as good a position as that party would have been if performance had been rendered as promised.").

The Trust asserts, however, that the Critical Fire Vendor Motion only sought $21.6 million for payment of Critical Fire Vendors and that Fluor was only listed for $3.7 million (the amount of invoices that Fluor had sent to Orion as of the time the Motion was prepared). (FOF 73, 80, 85) Approximately $9.9 million has already been paid to other Critical Fire Vendors. (FOF 137) Therefore, the Trust argues that the most Fluor can be awarded is approximately $11.7 million.

Flour argues that the Trust failed to establish that the payments made by Orion to the other vendors were authorized by the Critical Fire Vendor Order. Specifically, Fluor argues that there is no evidence that they were, in fact, Critical Fire Vendors.

The Court disagrees with Fluor on this factual point.
Victor testified that the vendors Orion paid were Critical Fire
Vendors and that he had negotiated Trade Agreements with them.
(FOF 137)  Fluor presented no evidence to the contrary.  The
Court accepts that testimony as evidence that the payments were
appropriate and were authorized under the Critical Fire Vendor
Order.

The Court disagrees, however, with the Trust's assertion
that Fluor cannot receive the full amount of its damages because
of the cap in the Critical Fire Vendor Order.  The Court has the
power to modify the Critical Fire Vendor Order as necessary to
achieve its goals.  See, e.g., In re Fonner, 262 B.R. 350, 356
(Bankr. W.D. Pa. 2001) (concluding that bankruptcy court has
authority under Fed. R. Civ. P. 60(b) to modify prior order it
entered where appropriate to accomplish justice).  The Critical
Fire Vendor Motion sought authority to pay the Critical Fire
Vendors their pre-petition claims in full in order to get the
coker rebuild completed to facilitate the sale to Valero.  The
Trust does not dispute that Fluor was a Critical Fire Vendor and,
in fact, the largest and most important of those vendors.  (FOF
85, 145)  The Trust also does not now dispute the amount of
Fluor's pre-petition claims.  (FOF 134)  The Court, therefore,
finds sufficient cause to modify the Critical Fire Vendor Order
to permit payment in full of Fluor's pre-petition claims.

The Trust argues further, however, that only the fire-related portion of Fluor's pre-petition claims should be paid under the Critical Fire Vendor Order.  This is contradicted, however, by the Critical Fire Vendor Motion itself and by the assertions made by Orion's counsel at the hearing on approval of that Motion.  (FOF 70, 77)  Orion requested, and the Court authorized, the payment of all pre-petition claims of Critical Fire Vendors (even those unrelated to the coker rebuild) in order to avoid any interruption in the completion of the coker rebuild. (FOF 78-79)  Therefore, the Court concludes that Fluor is entitled to payment of all of its pre-petition claims.

      2.   <u>Interest</u>

"When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500.  The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more."  La. Civ. Code Ann. art. 2000 (1987).  <u>See, e.g.</u>, <u>A.P.S., Inc. v. Standard Motor Products, Inc.</u>, 295 B.R. 442 (D. Del. 2003) (awarding pre-judgment interest for breach of post-petition contract); <u>Newman Marchive P'ship v. City of Shreveport</u>, 923 So. 2d 852, 861 (La. Ct. App. 2006) (awarding interest and citing La. Civ. Code Ann.

art. 2000 (1987)).  <u>See generally</u> Restatement (Second) of
Contracts § 354(1) (1981) ("If the breach consists of a failure
to pay a definite sum in money or to render performance with
fixed or ascertainable monetary value, interest is recoverable
from the time for performance on the amount due less all
deductions to which the party in breach is entitled."); 11-57
Arthur Linton Corbin et al., Corbin on Contracts §57.18 (2006)
("In all jurisdictions simple interest at the statutory legal
rate is recoverable as damages for non-payment of a liquidated
debt from the date of breach if the parties involved have not
themselves provided otherwise by contract.").

As noted above, the Court finds that Orion's refusal to pay
Fluor's pre-petition claims, as it promised, constitutes a breach
of a post-petition agreement to pay a definite sum of money
(namely, the amount of Fluor's pre-petition claims).  As a
result, the Court concludes that Fluor is entitled to recover
from the Trust the principal sum of $20,657,860.58 together with
pre-judgment interest, calculated from the date of reconciliation
of the sum due through the date of entry of the judgment.

The MSA did not provide for interest on unpaid invoices.
(JTX 83)  Therefore, pre-judgment interest on Fluor's pre-
petition claims shall be calculated at the legal rate set forth
in the Louisiana statute.  The Trust notes, however, that this
calculation is complicated by the fact that the Louisiana legal

32

rate is adjusted periodically.  Therefore, the Court will direct
that Fluor calculate the sum due and allow the Trust to comment
on the accuracy of that calculation.

     3.   <u>Attorneys' Fees</u>

    Fluor argues that it is well established that "the federal
exception" to the "American Rule" allows a court, in the exercise
of its equity powers, to award attorneys' fees to a party where
the opponent has acted in bad faith.  <u>See, e.g.</u>, <u>Alyeska Pipeline
Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 258-59 (1975); <u>In re
Fox</u>, 725 F.2d 661 (11th Cir. 1984); <u>In re Nangle</u>, 281 B.R. 654
(B.A.P. 8th Cir. 2002); <u>In re Neal</u>, No. 05-01676, 2006 Bankr.
LEXIS 736, at *1 (Bankr. D.D.C. Feb. 24, 2006); <u>In re Reilly</u>, 244
B.R. 46 (Bankr. D. Conn. 2000).  A court is justified in awarding
attorneys' fees for bad faith where recalcitrance forces a
claimant to hire a lawyer and go to court to get what is plainly
owed.  <u>See, e.g.</u>, <u>Vaughn v. Atkinson</u>, 369 U.S. 527 (1962); <u>Lewis
v. Texaco</u>, 527 F.2d 921 (2d Cir. 1975); <u>Lewis v. Texaco</u>, 418
F.Supp. 27 (S.D.N.Y. 1976) (on remand).  <u>See generally</u>
"Attorney's Fees and the Federal Bad Faith Exception," 29
Hastings L. J. 319, 323-326 (1978).

    In this case, the Court concludes that an award of
attorneys' fees is warranted because of Orion's refusal to pay
Fluor any amount of its pre-petition claims even though Fluor
fully completed the coker rebuild and even though Orion admits it

33

had authority under the Critical Fire Vendor Order to pay at least $11.7 million of those claims.  Orion's actions evidence its bad faith: requiring Fluor to submit and reconcile all its invoices before any payment would be made, dragging out the reconciliation process, ultimately refusing to pay any of Fluor's pre-petition claims, and opposing Fluor's Complaint and Motion for Relief.

The Court suspects that one reason Orion and the Trust refused to pay Fluor was because they contend that Fluor was responsible for the fire.  Until Orion is successful in its action against Fluor on that claim, however, it has no defense to payment of Fluor's claims as promised.  (FOF 127)  See, e.g., In re Worldwide Direct, Inc., No. 99-108, 2000 WL 33712474 (Bankr. D. Del. Nov. 22, 2000) (overruling objection to claim based on debtor's alleged preference action against creditor because preference had not been adjudicated) (citing Woolley's Parkway Ctr., Inc., 147 B.R. 996 (Bankr. M.D. Fla. 1992)).

The sheer recalcitrance that characterizes Orion's refusal to pay amounts plainly owed constitutes bad faith justifying the exercise of this Court's equitable powers to award attorneys' fees.  The Court will, therefore, consider an award of attorneys' fees in favor of Fluor.  The Court will direct Fluor to submit its fee request and permit the Trust to object to any fees requested.

34

IV.    <u>CONCLUSION</u>

    For the foregoing reasons, the Court will grant the relief requested by Fluor and direct the payment of its pre-petition claims in full, together with interest and attorneys' fees as may be awarded by the Court.

    An appropriate Order is attached.


Dated: July 20, 2007        BY THE COURT:

                                        Mary F. Walrath
                                        United States Bankruptcy Judge

SERVICE LIST

William H. Sudell, Esquire
Donna L. Culver, Esquire
Thomas W. Briggs, Jr., Esquire
Morris, Nichols, Arsht & Tunnell, LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Counsel for the ORC Distribution Trust

Francis A. Monaco, Esquire
Kevin J. Mangan, Esquire
Monzack and Monaco, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE 19801
Counsel for Fluor Enterprises, Inc.

Joseph B.C. Kluttz, Esquire
Kennedy Covington, Esquire
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, NC 28202
Counsel for Fluor Enterprises, Inc.

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| ORION REFINING CORPORATION, | ) Case No. 03-11483(MFW) |
| | ) |
| Debtor. | ) Related Documents: 1283 and |
| _____ | ) 1788 |
| FLUOR ENTERPRISES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary No. 04-52447(MFW) |
| | ) |
| ORION REFINING CORPORATION, | ) |
| CYPRESS ASSOCIATES, LLC as | ) |
| ORC DISTRIBUTION TRUST | ) |
| REPRESENTATIVE, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| ORION REFINING CORPORATION, | ) |
| | ) |
| Counter-Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| FLUOR ENTERPRISES, INC., | ) |
| | ) |
| Counter-Defendant. | ) |

<u>**ORDER**</u>

**AND NOW** this **20th** day of **JULY, 2007**, upon consideration of
the arguments and briefs of the parties and the evidence
presented at trial and on the basis of the accompanying Opinion
and Findings of Fact, it is hereby

**ORDERED** that judgment is entered in favor of Fluor
Enterprises, Inc., and against the ORC Distribution Trust in the
principal amount of $20,657,860.58; and it is further

**ORDERED** that Fluor Enterprises, Inc., shall be entitled to pre-judgment interest and attorneys' fees as may be entered by the Court after consideration of the further submissions of the parties; and it is further

**ORDERED** that Fluor Enterprises, Inc., shall submit its request for award of pre-judgment interest and attorneys' fees within 60 days of the entry of this Order; and it is further

**ORDERED** that the ORC Distribution Trust shall file any objection or response to the request of Fluor Enterprises, Inc., within 30 days thereafter.

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

cc: Francis A. Monaco, Esquire[1]

_____

1   Counsel is to serve a copy of this Order and accompanying Opinion and Findings of Fact on all interested parties and file a Certificate of Service with the Court.

SERVICE LIST

William H. Sudell, Esquire
Donna L. Culver, Esquire
Thomas W. Briggs, Jr., Esquire
Morris, Nichols, Arsht & Tunnell, LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Counsel for the ORC Distribution Trust

Francis A. Monaco, Esquire
Kevin J. Mangan, Esquire
Monzack and Monaco, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE 19801
Counsel for Fluor Enterprises, Inc.

Joseph B.C. Kluttz, Esquire
Kennedy Covington, Esquire
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, NC 28202
Counsel for Fluor Enterprises, Inc.

# EXHIBIT C



Not Reported in F.Supp.2d                                                                                          Page 1

Not Reported in F.Supp.2d, 1998 WL 906542 (W.D.Pa.)

**(Cite as: 1998 WL 906542 (W.D.Pa.))**

**H**

Only the Westlaw citation is currently available.

United States District Court, W.D. Pennsylvania.
PEERLESS WALL AND WINDOW
COVERINGS, INC., Plaintiff,
v.
SYNCHRONICS, INC., a Tennessee Corporation,
Defendant.
**No. Civ.A. 98-1084.**

Nov. 19, 1998.

*MEMORANDUM ORDER*

SMITH, J.

**\*1** Before the court is defendant's motion for stay of proceedings, dkt. no. 12. I will grant this motion only in part.

This is a "Year 2000" or "Y2K" computer software case in which plaintiff has filed a class action alleging that defendant's business software is not year 2000 compliant. Indeed, it is alleged that the software at issue will fail as early as January 1, 1999. Defendant has moved for a sis-month stay, arguing that damages are still entirely anticipatory and offering to research the problem and implement a software patch to fix it, at no charge to the public.

Plaintiff, who opposes any stay, counters that six months is too long a period to stay the proceedings here, given the likelihood of software failure in only a few weeks time. It also questions why six months--as opposed to some other time period--is required to implement the corrective software patch.

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Jones v. Clinton,* 137 L.Ed.2d 945, 968 (1997). The purpose of this power is to

promote "economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *In re Residential Doors Antitrust Litig.,* 900 F.Supp. 749, 756 (E.D.Pa.1995) (quoting *Texaco, Inc. v. Borda,* 383 F.2d 607, 608 (3d Cir.1967)).

After weighing those interests, I will grant a stay only until the end of 1998. As this case is presently pleaded, plaintiff's installed software continues to function properly and plaintiff has hence suffered no damages, nor is it argued that damage could even occur until after the end of this year. That being so, I can see no prejudice in granting a limited stay to allow the defendant to potentially cure the problem and avoid the need for litigation (and the transaction costs that go with it) altogether. On the other hand, should plaintiff's harm materialize in early 1999, requiring it to purchase new software, I can perceive no reason why plaintiff should have to bear the burden of a full six months delay before its claims can be resolved.

NOW, THEREFORE, this *19 th* day of November 1998, upon consideration of defendant's motion to stay, dkt. no. 12, and plaintiff's response thereto, it is hereby ORDERED and ADJUDGED that:

1. the aforesaid motion is GRANTED IN PART;

2. the above-captioned action, including all discovery, is stayed until December 31, 1998;

3. defendant may apply to this court for an extension of the stay for good cause shown, including a demonstrated, particularized need for further protection against specific, significant unfair harm if the extension is not granted. Should defendant make such a showing, plaintiff may oppose any extension by showing that actual damages have accrued.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 1998 WL 906542 (W.D.Pa.)

**(Cite as: 1998 WL 906542 (W.D.Pa.))**

Not Reported in F.Supp.2d, 1998 WL 906542 (W.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Donna L. Culver, certify that I am not less than 18 years of age, and that service of the **Motion Of Appellant/Cross-Appellee Cypress Associates, LLC, As ORC Distribution Trust Representative To Stay Appellate Proceedings Pending Disposition By The Bankruptcy Court Of Motion For Reconsideration And Further Proceedings Regarding The Request Of Appellee/Cross-Appellant Fluor Enterprises, Inc. For An Award Of Pre-Judgment Interest And Attorneys' Fees** was caused to be made on August 30, 2007 upon those parties identified below in the manner indicated.

Under penalty of perjury, I declare that the foregoing is true and correct.


Dated:  August 30, 2007                    _Donna L. Culver_
                                          Donna L. Culver (No. 2983)


**By Hand Delivery, Facsimile & Electronic Mail**
Francis A. Monaco, Jr., Esquire
Womble Carlyle Sandridge & Rice
222 Delaware Avenue, Suite 1500
Wilmington, DE  19801
Facsimile:  (302) 252-4330
FMonaco@wcsr.com

**By First Class U.S. Mail, Facsimile & Electronic Mail**
Charles R. Penot, Jr.
Middleberg Riddle & Gianna
717 North Harwood Street, Suite 2400
Dallas, Texas  75201
Facsimile: (504) 581-5983
cpenot@midrid.com

**By First Class U.S. Mail, Facsimile & Electronic Mail**
Joseph B. C. Kluttz
Kennedy Covington
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, North Carolina  28202
Facsimile: (704) 353-3185
jkluttz@kennedycovington.com

**By First Class U.S. Mail, Facsimile & Electronic Mail**
Kenneth E. Aaron
Weir & Partners LLP
824 Market Street
Suite 1001
Wilmington, DE 19801
kaaron@weirpartners.com

1218279.1